FILED
SUPERIOR COURT
OF GUAM

2021 FEB -5 PM 4: 45

CLERK OF COURT

BY: _____

# IN THE SUPERIOR COURT OF GUAM

|  |  |
|---|---|
| KALS DEVELOPERS, INC., | ) |
|  | ) |
| Plaintiff, | CIVIL CASE NO.: CV0793-12 |
|  | ) |
| vs. | ) |
|  | DECISION AND ORDER: |
| JOSEPH DUENAS, in his capacity as | Plaintiff's Motion to Enforce Settlement |
| ADMINISTRATOR OF THE ESTATE OF | Agreement |
| ROSARIO QUICHOCHO, | ) |
|  | ) |
| Defendant. | ) |

## I. INTRODUCTION

This matter came before the Honorable Maria T. Cenzon on November 9, 2020 for a hearing on Plaintiff Kals Developers, Inc.'s ("Plaintiff") Motion to Enforce Settlement Agreement ("Motion"). Plaintiff was represented by Attorney Delia Lujan ("Attorney Lujan" or "Lujan"). Attorney Vince Leon Guerrero ("Attorney Leon Guerrero" or "Leon Guerrero") represents the Defendant Joseph Duenas in his capacity as Administrator of the Estate of Rosario Quichocho ("Defendant"). The Parties' respective counsels were present at the hearing via Zoom platform, as authorized by the Guam Supreme Court in Administrative Order No. ADM No. 001-20 (July 1, 2020). The Court took the matter under advisement pursuant to Supreme Court of

Guam Administrative Rule 06-001 and CVR 7.1(e)(6)(A) of the Local Rules of the Superior Court of Guam.

After reviewing the Parties' written briefs and the record on file with the Court, the arguments presented at the Motion Hearing, and the applicable statutes and case law, the Court now issues this Decision and Order ruling on the Motion and DENYING PLAINTIFF'S MOTION TO ENFORCE THE SETTLEMENT AGREEMENT.

## II.    RELEVANT BACKGROUND

This matter involves a dispute between the parties wherein Plaintiff asserted claims for declaratory judgment regarding leases with the Department of Public Health and Social Services ("DPHSS") and for contribution for expenditure involving Lot 2416-4NEW Mangilao, Guam (the "Property") and Defendant asserted counterclaims for conversion and trespass. A bench trial was scheduled for a bench trial on October 12, 2017; however, on the first day of trial, counsels informed the Court that they had reached a settlement, subject to approval by the court in the probate proceeding for the Estate of Rosario Quichocho. *Minutes of Bench Trial Day 1* at 9:00:56 (Oct. 12, 2017).[1]

Plaintiff describes the settlement negotiations to have begun only a few days prior, on September 27, 2017, with the Parties meeting at the Kentucky Fried Chicken ("KFC") restaurant on the subject property to discuss settlement. *Mot.* at p. 1; *Wolff Decl.* ¶¶ 4, 6, 7. Plaintiff claims that "[a]s the parties walked inside and outside of the L-shaped building, a settlement agreement was reached by the parties." *Wolff Decl.* ¶ 7. Based on the Parties' representation that a settlement was reached, the Court found good cause to vacate trial to allow the Parties' time to

---

[1] Both Attorney Wolff and Attorney Leon Guerrero were present at the Bench Trial (Day 1) October 12, 2017 when Leon Guerrero represented to the Court that the parties had reached a settlement, but that the probate court would have to approve the settlement agreement. Thereafter, the parties would file a dismissal with prejudice "once the Probate Court approves the settlement agreement." *Min. Bench Trial Day 1* (Oct. 12, 2017).

memorialize the agreement, obtain approval by the probate court, and set the matter for further proceedings on April 4, 2018. *Min. of Bench Trial* at 9:01:47.

Exhibit 1 to the *Wolff Declaration* is an e-mail chain starting from October 10, 2017 and ending on April 3, 2018, which establishes that the parties were still discussing the preparation of the settlement agreement. Leon Guerrero was awaiting a draft and Wolff was charged with preparing it. Nearly three months after the October 12, 2017 trial date, on January 9, 2018, Leon Guerrero sent an e-mail to Lujan, writing: "Can you provide the written settlement agreement? We need to obtain court permission for the settlement." On January 9, 2018, Attorney Lujan responded: "I will try to prepare a *draft* settlement agreement soon." Exhibit 1 to *Wolff Decl.* (emphasis added).

Later, on January 19, 2018, Leon Guerrero again wrote: "We will need to ask the probate court to approve the settlement. As a reminder, *the judgment must state Land Management must honor deconsolidation of lots so separate assessments can be made.*" *Id.* (emphasis added). There does not appear to be a response from Lujan. Again, on February 15, 2018 Leon Guerrero emailed: "Please provide the written settlement agreement as soon as possible. As stated earlier, we will need to get approval from the probate court. Please call when you have an opportunity." *Id.* Wolff replied on February 15, 2018 replied: "...I don't recall the parties agreeing to the DOLM language. Is that necessary for the deconsolidation? Also, the parties agreed to dismiss the case with prejudice. Any deconsolidation can potentially be done prior to dismissal. I'll be reviewing my notes." *Id.*

On February 20, 2018, Leon Guerrero emailed Wolff again: "We still need the written agreement that conformed with our oral settlement agreement. It is needed for court approval in probate. Land Management should be included to ensure the de-consolidation of the lot (one of

the main reasons a settlement was reached). Please forward a written agreement so we can proceed with Probate approval." *Exhibit 1 to Wolff Decl.* On April 3, 2018, Wolff responded by sending the document, writing: "Please see the attached *proposed* Settlement Agreement. If you have any proposed revisions, please let me know." *Id.* (emphasis added).

Plaintiff claims it began performance of certain provisions agreed to by the parties as part of their settlement; specifically, it relocated its waterline, installed a septic tank, and constructed two walls on the subject property. *Mot.* at p. 2. Similarly, Defendant prepared a deconsolidation map and sent the map to the Plaintiff's counsel for execution by Dr. Mathilda Kallingal. *Id.* Defendant asserts that "deconsolidation is a condition of settlement" and Plaintiff agreed. *Duenas Opp. to Pl.'s Mot. to Enforce Purported Settlement* at 3, 4 (Jan. 23, 2019). In response to receiving the map, however, Plaintiff informed the Defendant that they would need a written Settlement Agreement before Dr. Matilda would execute the deconsolidation map and, further, confirmed that the Parties' written settlement agreement would have to be submitted to the Probate Court for approval. *Motion* at 2.

During a hearing before the Court on April 4, 2018, the Parties once again informed the Court that a settlement agreement had been reached and Plaintiff stated that the settlement agreement "would be subject to probate court approval." *Min. of Further Proceedings* at 3:53:07 to 3:56:08 (April 4, 2018). The Court then set another hearing for the parties to inform the Court of the status of the agreement and probate court approval on June 13, 2018.

Correspondence submitted together with Defendant's Opposition to Plaintiff's Motion indicates that the Parties continued to communicate regarding the written settlement agreement, or lack thereof, from October 2017 through June 8, 2018. Exhibits A, B and C to *Decl. of Vincent Leon Guerrero* (Jan. 24, 2019). None of the Parties ever executed the Settlement

Agreement. Exhibit 1 to *Kallingal Declaration.* At the June 13, 2018 hearing, the Parties announced that they were unable to reach an agreement and requested that the Court set trial dates:

> WOLFF: Well, your Honor, in this case, we did reach a settlement agreement and the Court was informed of that last year, or actually, I believe it was on the eve of trial. A *draft* [emphasis added] settlement agreement was submitted to Mr. Leon Guerrero and work was done towards that settlement agreement, including the erection of a wall on the [inaudible] level as the building as part of the agreement prior to the building of a wall on the first and second levels of the L-shaped building. And Mr. Duenas's counsel did provide to my office a proposed deconsolidation map for my client to review.
>
> And, while I was off island, I received an email about a month...I'm sorry, about a week and a half ago, or two weeks, stating that his client takes the position that there is no settlement agreement and they would be requesting a trial.
>
> And so, your Honor, our position is that there is a settlement and *we've been moving towards that settlement agreement,* [emphasis added], uh, almost $22,000 has been spent by my client to build a wall on the upper level. And, he also has the contract to build the lower level wall. The reason it hasn't been built yet is because Public Health is still there, and they will be moving out by June 30. And it is my understanding that Mr. Duenas, represented by Mr. Leon Guerrero, also gave notice to Public Health that they need to vacate by July 1. So once they move out the lower level wall can be erected.
>
> My client also spent $16,000 paid to Todo Mauleg to relocate the waterline easement ...to place it on the Kallingal side of the property and has also built a septic tank for their side of their property. So, almost $38,000 has been spent by my client on the deconsolidation of the property.
>
> LEON GUERRERO: Your Honor, what happened was, *we thought we had a settlement.* [emphasis added]. And the main thing that Mr. Duenas wanted to do was to do the deconsolidation of the property. We submitted a map which has to be signed by Dr. Matilda Kallingal, not any of the parties to *this* case [emphasis added]. ... She is the owner of the property that KDI is on, KDI is leasing the property from Dr. Matilda Kallingal, I believe. And so

what we needed was assurances, and we have not gotten it. We said, "Sign the map and then we can go forward." We came up with the settlement sometime in November, or October, of last year, and this thing should have been done a long time ago. *We also said that the settlement would be contingent upon probate court approval. We haven't gotten that because we haven't gotten our settlement yet.* [emphasis added]. We want to make sure that the property would be deconsolidated. That's the main thing that we wanted. We didn't want to be working together with KDI anymore, … pay property taxes together, share rents with, uh, whomever, so we needed assurances that they would …separate the property, and *it had to be from somebody who was not a party to this case.* * * * We would ask that this be placed for trial and we go forward with it.

\* \* \* \* \* \*

WOLFF: … If they need Dr. Matilda Kallingal to sign [the deconsolidation map], she will sign it. That's the assurance. If that's all that they needed? She will sign it! She will do whatever is necessary *as part of the settlement agreement. \*\*\* I provided the Settlement Agreement, the proposed Settlement Agreement to Mr. Leon Guerrero, I didn't get any feedback from him! Any concerns that he had, he could provide that to me, and I haven't received it.* [emphasis added]. I told him, that, yes, we have the deconsolidation map that you provided, but my client or, it can't be signed yet until he signs, his client signs, the Settlement Agreement! And so, they need to respond to the Settlement Agreement. *\*\*\* We can't sign the map without their commitment to sign the Settlement Agreement.* [emphasis added]. Yet, your Honor, we still relied upon the settlement agreement with my client going forward and erecting a wall and spending $16,000 to relocate the waterline and build the septic tank, which is already done.

\* \* \* \* \* \*

*Further Proceedings of June 13, 2018* at 3:52:38 to 4:05:03 (June 13, 2018). On June 26, 2018, the Court issued its 4th Amended Order Setting Case Schedule setting trial for February 6 to 8,

2019. On December 26, 2018, Plaintiff filed the instant Motion to Enforce Settlement Agreement.[2] The Hearing on the Motion to Enforce Settlement was scheduled for April 5, 2019.

The progress of this civil matter is a tortured chain of proceedings before this Court where the Parties see-saw back and forth between going to trial and reaching a settlement of the dispute without the need for trial. At the hearing on the Plaintiff's Motion on April 5, 2019, the parties once again informed the court they had reached a settlement and requested that the Motion be held in abeyance. They also requested additional time to allow the probate court to approve the settlement agreement. *Minutes of Hrg. on Pl.'s Motion to Enforce Settlement Agreement* at 9:53.19 (April 5, 2019). Subsequently, during the June 5, 2019, Status Hearing, the parties again discussed the need for probate court approval and informed the Court the Petition had yet to be filed before the probate court. *Scheduling Conference* (June 5, 2019). Another status hearing was then scheduled for August 28, 2019.

During the August 28, 2019 Status Hearing the parties were still negotiating terms of the settlement agreement. No final written and executed agreement had yet been presented to the Court nearly eight (8) months after the filing of the Motion to Enforce the Settlement Agreement – only the unexecuted Settlement Agreement attached to the Kallingal Declaration as Exhibit 1. The Court indicated that it would set the matter for either an evidentiary hearing or a motion hearing if there was no resolution by the next hearing set for November 20, 2019.

On November 20, 2019, the parties lodged a Stipulation and Order for Continuance indicating that "Defendant is working on and almost done with proposed revisions to the parties' written agreement." *Stip. and Order for Continuance* (Nov. 21, 2019). The Court set the matter for a Status Hearing on December 11, 2019. Two further proceedings followed and as of

---

[2] The Court issued its Order Vacating the February 2018 Bench Trial finding the Motion to Enforce Settlement

February 26, 2020, the parties still had not reached an agreement; therefore, the Court set the hearing on the Motion To Enforce Settlement Agreement which had been held in abeyance since April 5, 2019. The Court held a hearing on the instant Motion To Enforce Settlement Agreement on November 9, 2020.[3]

The Court finds that the procedural history of this case as detailed, above, provides an important backdrop and basis for the Court's ruling denying Plaintiff's Motion to Enforce Settlement Agreement after applying the relevant law.

## III. LAW AND ANALYSIS

### A. Contract principles apply to settlement agreements.

Guam law applies contract principles to the interpretation of a settlement agreement. *Blas v. Cruz*, 2009 Guam 12, ¶ 11 (Guam Nov. 4, 2009). It is axiomatic that a valid contract is comprised of three elements: an offer, acceptance of the offer, and consideration. 18 GCA § 85102; *Mobil Oil Guam, Inc. v. Tendido*, 2004 Guam 7 ¶ 34. Thus, in order for Plaintiff to meet its burden of establishing the existence of a contract in this case by a preponderance of the evidence, it must show "'an offer encompassing all essential terms, unequivocal acceptance by the offeree, consideration, and an intent to be bound.'" *Blas* at ¶ 18 (quoting *Mobil Oil Guam, Inc. v. Tendido*, 2004 Guam 7 ¶ 34 (citation omitted)).

An oral settlement agreement may also be enforceable even if none of its terms were put on the record or reduced to a writing, so long as the movant meets its burden to demonstrate the existence of the agreement. 18 GCA § 86104; *Lynch, Inc. v, SamataMason Inc.*, 279 F.3d 487,

---

Agreement to be dispositive. Order Vacating Bench Trial (Jan. 9, 2019).

[3] The delay in bringing the matter before the Court for a hearing on the motion is explained by the Emergency Declaration precipitated by the COVID-10 pandemic and the shutdown of the court's physical operations by March 16, 2020. The matter was scheduled at the earliest time available, following protocols established by the Guam Supreme Court in various administrative orders governing the operations of the Judiciary of Guam during the pandemic.

490-91 (7th Cir. 2002). In determining whether an enforceable settlement agreement exists, the Court may consider the evidence of settlement negotiations, including the correspondence between the parties and submitted to the Court. *See, National Union Fire Ins. Co. of Pittsburg, PA v. Cyfred, Ltd.,* 2015 Guam 7 (citing *Blas* ¶ 15)(The court may consider the parties evidence of settlement negotiations in passing on the question of whether a settlement agreement existed). The Court may proceed to consider the Motion without an holding an evidentiary hearing where, such as here, neither party requested an evidentiary hearing and the main source of evidence came from documentary evidence such as emails and letters between the parties' counsels regarding settlement. *Sharrock v. McCoy,* 2016 Guam 7 ¶ 81 – 83.[4] It must be noted, however, that at the November 9, 2020 hearing on the Motion, this Court did inquire whether any testimony was going to be presented by *either* party in support of their respective positions, and the Parties informed the Court that neither intended to call any witnesses or present any evidence during the hearing except that which was submitted in the pleadings and declarations. *Hearing on Mot. to Enforce Settlement Agreement of Nov. 9, 2020* at 9:57:02 (Nov. 9, 2020).

Contracts require mutuality of consent from both parties, which means that they must agree on the same thing in the same sense. *Blas* ¶ 18, 19 ("It is hornbook law that, to ensure mutual consent of the parties to an offer, an offer must be mirrored by its acceptance to create a binding contract"); 18 GCA § 85316 ("Consent is not mutual, unless the parties all agree upon

---

[4] The Parties thoroughly briefed and argued this matter before the Court, supplying it with Declarations from each counsel and from George Kallingal. The Court considered the parties' assertions and declarations as contained in the emails exchanged between the Parties' counsels over the course of a couple of years in attempting to reduce the agreement to a writing. Moreover, the Parties continued to return to Court for either trial or for motion hearings, only to inform the Court that a settlement had been reached, which clearly has not occurred to this date. With the advent of the pandemic and the Court desiring to preserve its resources, it deemed an evidentiary hearing to be unnecessary here. It should be noted that on the hearing date of the Motion to Enforce Settlement Agreement on November 9, 2020, Plaintiff's counsel wanted one more opportunity to discuss with her clients revisions to a settlement sent by Leon Guerrero. However, the Court determined to hear the Parties arguments on that day without further continuances.

the same thing in the same sense"). Contracts may be oral under 18 GCA § 86104; however, effect must be given to the mutual intention of the parties as it existed at the time of entering into the settlement agreement. 18 GCA § 87102. If a settlement agreement is reduced to a writing, the intention of the parties is to be ascertained from the writing alone, if possible. *Lujan v. Lujan*, 2012 Guam 7 ¶ 30.

**B.      Applying Contract Law principles, the Court finds that the Parties do not have an enforceable Settlement Agreement because there was no meeting of the minds.**

The Parties do not disagree that they reached an agreement to resolve the dispute without proceeding to trial on October 12, 2017. However, the question of what settlement terms the Parties agreed on forms the crux of the current dispute. Plaintiff claims that the Settlement Agreement attached as Exhibit 1 of the Kallingal Declaration evidences the Parties' agreement resulting from the KFC Meeting. Defendant, on the other hand, claims that the execution of the deconsolidation map by Dr. Matilda Kallingal was a material condition of the settlement, as is approval by the probate court presiding over the matter of the Estate of Rosario Quichocho. These terms are not specifically included in the proposed Settlement Agreement, although these conditions are clearly discussed in the email exchanges between counsels. Arguably, Paragraph 5 "Execution of Other Documents" may include by inference the execution of the deconsolidation map by Dr. Matilda Kallingal; however, given Defendant's declaration, through Leon Guerrero's email to Wolff, that "there is no settlement" further evinces that there was no meeting of the minds and certainly no "unequivocal acceptance by the offeree" as required to form a contract. Additionally, the Court finds that Plaintiff's counsel's assurances during the hearings of this matter that Dr. Matilda Kallingal will sign the deconsolidation map are insufficient to find that the Parties have an enforceable settlement agreement in the first instance.

The chain of emails exchanged by the parties and attached as exhibits to the Leon Guerrero and Wolff Declarations further demonstrates to the Court that the Parties contemplated reducing the oral agreement reached at the KFC Meeting to a mutually agreed upon writing, which would be executed by the parties, presented to the Probate Court for its approval, and result in the Judgment of dismissal with prejudice of the instant lawsuit.[5] In more than one occasion, both before the Court and in the emails exchanged between the parties, the Settlement Agreement is referred to as a "draft," and a "proposed Settlement." *See, e.g., Further Proceedings of June 13, 2018,* supra. Leon Guerrero states several times in correspondence to Wolff that the deconsolidation or the execution of the deconsolidation map is a material condition of settlement. *See, e.g., Leon Guerrero Decl. at Ex. A, B and C.* Even the Plaintiff notes that a material condition of settlement – the signing of the deconsolidation map – cannot occur without Defendant's "commitment to sign the Settlement Agreement." *Further Proceedings of June 13, 2018.*

Additionally, while the proposed Settlement Agreement attached as Exhibit 1 to the Kallingal Declaration refers to the deconsolidation of the lots, no specific language compels the Plaintiff to cause Dr. Matilda Kallingal to sign the deconsolidation map. Leon Guerrero argued that this was a significant issue because Dr. Matilda Kallingal is not a party to the litigation; therefore, an order of this Court compelling her to sign the map should she refuse to do so would have no effect upon her because personal jurisdiction never attached to her in this case. Thus, despite language in the Settlement Agreement which seems to impose upon the Plaintiff the

---

[5] During the November 9, 2020 hearing, Plaintiff contended that Probate Court approval had not been obtained because Leon Guerrero had not responded to the proposed Settlement Agreement. The Court rejects this contention because even after the Parties' corresponded in June 8, 2018, counsels continued to negotiate terms, which supports this Court's finding that the Parties did not have an enforceable agreement. While they may have reached an agreement in principle, Plaintiff failed to establish by a preponderance of the evidence that the Parties had a final enforceable Settlement Agreement.

obligation to ensure that Dr. Matilda Kallingal signs the deconsolidation map,[6] it is reasonable to argue that the Settlement Agreement attached to the Kallingal Declaration does not make this a material condition of settlement. Such a position would be contrary to the intent as expressed in Attorney Leon Guerrero's emails to Attorney Wolff and as argued before this Court.[7]

Based on the findings of the Court and the record on file herein, the Court cannot conclude that there is an enforceable Settlement Agreement between the parties.[8]

## IV. CONCLUSION

For the reasons set forth herein, the Court hereby **DENIES** Plaintiff's Motion to Enforce the Settlement Agreement. This Court shall set the matter for trial through separate Trial Setting Order.

**SO ORDERED** this _____ FEB 05 2021 _____.

_____
**HONORABLE MARIA T. CENZON**
JUDGE, SUPERIOR COURT OF GUAM

---

[6] See, Paragraph 3 "Cooperation" and Paragraph 5 "Execution of Other Documents."

[7] Another issue which hinders the Court from finding that the proposed Settlement Agreement is enforceable is that it is contingent upon the approval of the Probate Court under 15 GCA §§ 2216, 2547. If the Probate Court does not approve the proposed Settlement Agreement, would that nullify the enforceability of the agreement of the Parties? The Parties never addressed this issue; however, the Court finds that because such approval is required under the Probate Code, a rejection of the agreement by the Probate Court or modification thereof, necessarily implies that the Settlement Agreement as attached to the Kallingal Declaration was not final and enforceable.

[8] The Court will not consider the instant Motion under a summary judgment analysis as employed in *Sharrock* because the Court finds no enforceable settlement agreement to have been reached due to material issues in dispute as to the provisions of the Parties' supposed Settlement Agreement. *Compare, Sharrock*, where the trial court found an enforceable settlement agreement to have existed under the circumstances.